Filed 4/11/25  P. v. Shamlou CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083585 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD299052) |
| AFSAR SHAMLOU, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Francis Devaney, Judge.  Affirmed with modifications.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

Afsar Shamlou challenges probation conditions that permit her probation officer to (1) prohibit her from consuming and possessing alcohol, (2) require her to attend self-help meetings for alcohol addiction, and (3) require her to submit to alcohol testing. The conditions also prohibit her from being in a place where alcohol is the main item sold. We conclude the conditions are unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and must be stricken.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Nancy Y. suffered a stroke and had to move from her home to an assisted living facility. She was 86 years old and had lived in her home for almost 40 years. After the stroke, the property taxes on her home fell into arrears because she incorrectly believed they could be paid from her estate after she died.

In 2018 or 2019, Nancy's nephew, Maurice Y., learned about the delinquent taxes and began making some of the required payments on her behalf. In early 2021, he went to make a property tax payment and learned that someone else had paid them in full. Tax records indicated Shamlou made the payments.

After learning the taxes had been paid, Maurice and his cousin Michael A. went to their aunt's home to check on it. Shamlou's car was parked in the driveway when they arrived. "No trespassing" signs had been posted in the yard. Security cameras had been installed where they had not been before, and the front door was wide open. Shamlou came out of the house through

---

[1]    We resolve this case by memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1.

2

the front door.  When confronted by Michael, she said she was the owner because she had paid the delinquent taxes.[2]

Maurice went inside the house and saw that it had been "cleaned out." Shamlou, in fact, had arranged for Nancy's personal possessions and fixtures to be sent to the dump, and was in the process of "gutt[ing]" it for an interior remodel.  Nancy did not give Shamlou permission to enter her house, discard her possessions, change the locks, or remodel the interior.  No one in Nancy's family did so either.

Michael and Shamlou argued about who owned the property until she finally drove away.  Shamlou, however, did not relinquish possession of Nancy's home.  Nancy was eventually forced to file a civil lawsuit seeking repossession.[3]

The San Diego District Attorney's Office filed criminal charges against Shamlou on May 23, 2023.  The operative information charged her with five felony offenses as follows:  theft from an elder (Pen. Code, § 368, subd. (d)), vandalism over $400 (§ 594), two counts of burglary (§ 459), and grand theft of personal property (§ 487, subd. (a)).  In December 2023, a jury convicted her of all counts.

The San Diego Probation Department interviewed Shamlou on December 15, 2023.  Relevant here, Shamlou told the probation officer she drinks one glass of wine or whisky once a week and smokes marijuana once

---

[2]    According to a real estate law expert, who later testified at Shamlou's trial, there is a common misconception that a person is entitled to take adverse possession of real property by merely paying past due property taxes, but "that is not the way the law works."

[3]    The civil proceedings were still ongoing four years after Michael and Maurice first discovered Shamlou in their aunt's home.

every few months. She does not use methamphetamine, cocaine, heroin, or other substances. She denied having an alcohol or drug addiction and did not think she would benefit from substance abuse treatment or support services.

Based on the investigation and interview with Shamlou, the probation officer recommended that "[a]ll standard conditions of probation are recommended, including standard drug and alcohol conditions given her admitted prior use." Neither party discussed alcohol or drug use in their sentencing briefs.

In January 2024, the court ordered imposition of sentence suspended and granted Shamlou formal probation for two years. The trial court ordered her to complete 150 hours of community service and ordered her to serve one day in jail with credit for time served.

Among other conditions of probation, Shamlou's probation terms included four standardized alcohol-related conditions that appear on the superior court's form order granting formal probation. The conditions provided: (1) "[d]o not knowingly use or possess alcohol if directed by the [probation officer]"; (2) "[a]ttend '[s]elf-help' meetings . . . if directed by the [probation officer]"; (3) "[s]ubmit to any chemical test of blood, breath, or urine to determine blood alcohol content and authorize release of results to [the probation officer] or the court whenever requested by the [probation officer]"; and (4) "[d]o not be in places, except in the course of employment, where you know, or a [probation officer] or other law enforcement officer informs you, that alcohol is the main item for sale."

The trial court explained its reason for imposing the conditions as follows: "I will order that you not use drugs or alcohol while on probation. You will submit to periodic testing of you by your probation officer. You will also submit to an assessment if probation deems that necessary. Probation

4

will assess you to determine whether you have a drug or alcohol problem. If the assessment indicates that you do, probation will refer you to a substance abuse treatment program that you will complete. I doubt any of this applies to you, but I will make those orders." Shamlou's trial counsel did not object to imposition of any of the conditions relating to use, possession, and abuse of alcohol.

## DISCUSSION

Shamlou contends the trial court abused its discretion by ordering her to comply with the four alcohol-related conditions of probation. We agree. The imposition of these conditions was a straightforward violation of our Supreme Court's holding in *Lent, supra,* 15 Cal.3d 481.

In *Lent,* our high court held a probation condition is unreasonable, and its imposition is an abuse of discretion, if it (1) " 'has no relationship to the crime of which the offender was convicted,' " (2) " 'relates to conduct which is not in itself criminal,' " and (3) " 'requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra,* 15 Cal.3d at p. 486.) Here, as the Attorney General concedes, "all three *Lent* factors are met." Shamlou was charged and convicted of crimes that did not involve alcohol in any way. The use of alcohol is not in in itself criminal. And Shamlou's moderate use of alcohol is not reasonably related to the possibility she may commit future real estate fraud or other crimes. It appears the trial court itself acknowledged the probation condition did not apply to Shamlou. It stated, "I doubt any of this applies to you, but I will make those orders."

The Attorney General, nevertheless, contends Shamlou forfeited her claim by failing to object below. He is correct. "As a general rule, failure to challenge a probation condition on . . . *Lent* grounds in the trial court waives the claim on appeal." (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033.)

5

However, "an appellate court may address such an issue if it so chooses." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) We choose to do so here because, under the unique circumstances, we are presented with both undisputed facts and an agreement by both parties that the court made a clear, obvious, and correctable legal error based on those undisputed facts. (Cf. *People v. Smith* (2001) 24 Cal.4th 849, 853.)

The Attorney General concedes it is "undisputed" that Shamlou's "crimes have no relation to alcohol" and "the ingestion of alcohol is not, per se, criminal conduct." The parties also both agree that nothing in the record indicates Shamlou has an alcohol abuse problem that could potentially contribute to future criminality. The parties further agree—based on these undisputed facts—the trial court abused its discretion when it imposed the condition. Thus, there is no question the trial court erred when it imposed alcohol-related conditions in violation of settled law.[4]

---

[4] Because we conclude the conditions must be stricken, we do not reach Shamlou's other claims concerning them.

## DISPOSITION

The order granting probation is modified to strike conditions 8b, 8c, 8f, and 8h.  The judgment is affirmed in all other respects.


DO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.